UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~

DIANE PILCHEN,

                                        Plaintiff,

                vs                                      5:08-CV-1064

CITY OF AUBURN, NEW YORK,

                                Defendant.


~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~

APPEARANCES:                                    OF COUNSEL:

PUBLIC UTILITY LAW PROJECT
OF NEW YORK, INC.                               GERALD ARNE NORLANDER, ESQ.
Attorneys for Plaintiff
Suite 420
194 Washington Avenue
Albany, NY 12210

OFFICE OF CORPORATION COUNSEL                   JOHN C. ROSSI, ESQ.
CITY OF AUBURN, NEW YORK
MEMORIAL CITY HALL
24 South Street
Auburn, NY 13021

DAVID N. HURD
United States District Judge


## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

        Plaintiff Diane Pilchen ("Pilchen" or "plaintiff") brought an action against defendant

City of Auburn, New York ("City" or "defendant"), seeking declaratory and injunctive relief,

along with damages, resulting from the termination of water service to her residence and

the subsequent denial by the City of water service under her name.  Pilchen has moved for

partial summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure,

seeking a declaratory judgment on her three causes of action and a determination that

defendant is liable to her for damages.  Defendant filed a cross motion seeking summary

judgment pursuant to Rule 56(b) of the Fed. R. Civ. P., but failed to submit a Statement of

Material Facts with the motion as required by Local Rule 7.1(a)(3).  Oral argument was

heard on January 22, 2010, in Utica, N.Y. and decision was reserved.

## II. <u>FACTS</u>

The defendant (the nonmovant party here), did not controvert any of the material

facts set forth by the plaintiff (the movant), in plaintiff's Statement of Material Facts,

therefore the undisputed facts as stated by the movant have been admitted and utilized to

consider the motion and cross-motions of the parties.  <u>See</u> L.R. 7.1(a)(3).

In 2007, the City revamped its procedure for handling delinquent water and sewer

service accounts.  Rather than adding delinquent water charges to the property tax bill of

the owner at year-end as had been its traditional practice, the City elected to institute new

procedures to improve the speed of collecting quarterly water service bills.  The new

process which began on July 1, 2007, called for a notice to be sent to the owner once a

quarterly water payment was thirty days past due.  If the account reached sixty days

delinquent, a notice would be mailed to the owner warning that the water would be turned

off in ten days if the delinquency was not cured.  Simultaneously, a notice would be affixed

to the premises advising occupants the water service was in danger of being disconnected

in ten days.  The notice posted at the affected building did not provide the occupant with an

opportunity to a hearing prior to the service being disconnected.  The City shortened the

time frame for this process in May, 2008, mailing the first notice twenty days after the

quarterly bill became overdue, and sending the termination warning after forty days of delinquency, with disconnection of service possible ten days later.  The notice posted at the property did not change.

Plaintiff rented a home located at 12 Elm Street in Auburn, New York, and in 2008, she had resided there for a period of two years.  Pilchen's monthly rental payments covered not only use of the residence, but also water service, with the landlord responsible for the payment of the water bills.  The City mailed quarterly water bills for the Elm Street property to the landlord at her Florida address during 2008.

The Florida-based landlord apparently failed to make her required payments to the City of Auburn for water service at the Elm Street property.  On April 15, 2008, the City sent a certified letter to the landlord, informing her the water to 12 Elm Street would be turned off in ten days if payment was not received prior to the deadline.  Plaintiff, as the tenant, was not notified of the impending water disconnection by defendant.  Defendant turned off water service to 12 Elm Street on April 30 and assessed a fee of $50 to the landlord's account.  Pilchen went to the office of the water department on May 2 requesting water service be restored to her home, but the City refused to reconnect unless the delinquency was satisfied.  Plaintiff paid $300 toward her landlord's arrearage and the City reinstated water service to her home, assessing a $50 reinstatement fee to the water account.

Subsequent to the payment made by Pilchen, on May 30, 2008, the City mailed another notice of termination to their customer in Florida stating that she owed $578.35 for water service to the Pilchen residence.  Once again, the City did not notify the plaintiff that water to her home was in danger of being turned off.  Defendant mailed yet another letter to the landlord on June 27, informing her the water service to 12 Elm Street would be

disconnected for nonpayment.  The City mailed a $794.83 water bill to the landlord's

Florida address on July 7, consisting of the past due amount of $578.35 and $196.80 for

the current quarterly service.  The defendant did not send any copies of these letters or

bills to the plaintiff's address.  However, the City did post a notice at the Elm Street home

for the purpose of advising residents therein that water service to the home would be

disconnected within a short period of time.  The notice posted by the City failed to include

any method by which the pending water termination could be contested by the plaintiff.

In July, 2008, plaintiff requested the City establish an account in her name for water

service to the Elm Street property because of the apparent default by her landlord.  This

request was denied by the defendant, who did not provide plaintiff with a written

explanation of the reason for denial.  Also in July, 2008, plaintiff arranged to make

additional payments on the landlord's account, but financial circumstances prevented her

from making the promised payments.[1]  On August 6, defendant terminated water service at

the plaintiff's residence and assessed another $50 disconnection fee to the landlord's

account.  Plaintiff again requested an account be established in her name and was

summarily denied.  As an alternative, Pilchen sought to pay the current charges on her

landlord's bill, a request that was also denied by the City.  On August 7, 2008, the City

demanded the plaintiff sign an agreement to pay the landlord's arrearage as a prerequisite

to having water service restored at her home.  The agreement required an immediate $100

payment on August 7 and $50 payments each week until the landlord's debt was fully

---

[1]  Plaintiff's Statement of Material Facts indicates her water was disconnected on July 23, 2008, and reconnected after Pilchen made a $300 payment on her landlord's account for water service. Although the City did not dispute any of the facts set forth by the plaintiff, a review of the exhibits and the affidavit of the plaintiff fails to show that her water was actually disconnected in July, 2008, nor do any supporting documents indicate that she made a $300 payment to the defendant in July, 2008.

satisfied.  Faced with the choice of signing the agreement or no water in her home, plaintiff signed the agreement and paid $100 toward the landlord's account, with the defendant adding another $50 fee to that account for restoring service.

Pilchen made only one of the $50 payments stipulated in the August 7 agreement and as a result, on September 19, the City posted a notice at her home advising of the impending termination.  The City's notice again failed to provide a means by which Pilchen could request a hearing on the matter prior to losing water service at her residence. Although the defendant is unable to provide a copy of the notices it placed on the plaintiff's residence in 2008, the City has provided an example of the notice it currently utilizes to inform residents their water service is scheduled to be disconnected.  The new notice, developed after this litigation began, states that tenants have the right to a hearing prior to their water service being terminated.

The City again disconnected water to 12 Elm Street on September 30, 2008, but on this occasion the City's code enforcement department condemned the plaintiff's house as uninhabitable because of the lack of water service to the building.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Richardson v. New York State Dep't of Correctional Servs., 180 F.3d 426, 436 (2d Cir. 1999); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990).  Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Richardson, 180 F.3d at 436; Project Release v. Prevost, 722 F.2d 960, 968 (2d Cir. 1983).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.  To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.  Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

## B. **Fourteenth Amendment Procedural Due Process**

Pilchen seeks a declaration that the City violated her right to due process by terminating water service to her home without proper notice on several occasions.  Plaintiff also seeks a determination that as a result of the alleged violation, the City is liable to her for damages.  The relief sought by plaintiff is pursuant to 42 U.S.C. § 1983 which allows for suits to be brought against persons who deprive a party of the rights, privileges or immunities granted through the Constitution.  The due process clause of the Fourteenth

Amendment warrants that "No State shall . . .  deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV § 1.

At issue here is whether the City's actions violated the plaintiff's property rights by disconnecting water service to her residence without proper notification to her.  Paramount in determining this matter is whether Pilchen, as the tenant of the residence, had a legitimate property interest in the water service to the home.  Additionally, if a property interest exists, the question of what form of due process is required if that interest will be infringed upon by the City must be determined.  Finally, the issue of whether the City failed to provide proper due process in declining to provide water service in plaintiff's name must be considered.

To prevail, plaintiff must show that a state actor under color of a statute, acted in a manner which deprived Pilchen of her right to due process prior to infringing upon her property interest.  See 42 U.S.C. § 1983 (2006).  The City of Auburn is a municipality in the state of New York, and is therefore a state actor.  A city "can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted by that body's officers."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 98 S. Ct. 2018, 2036 (1978).

### 1. **Tenants Property Interest in Water Service**

While the Constitution protects against states infringing upon property interests without due process, those "[p]roperty interests . . . are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law . . . ."  Bd. of Regents v. Roth, 408 U.S. 564,

577, 92 S. Ct. 2701, 2709 (1972).  Bases for a claim of entitlement to property interests arise from either a state law or a contract between the state and the citizen.  See id. at 577-78, 92 S. Ct. at 2709.  The right to water service may not be a fundamental right guaranteed by the Constitution, however the Constitution does protect the rights of those granted a property interest by State law.

The Second Circuit has withheld any determination as to whether there is a fundamental right to water supply protected by the Due Process Clause and there is no need to address that issue here.  See Walz v. Town of Smithtown, 46 F.3d 162 (2d Cir. 1995).  The Sixth Circuit, posed with the question of whether water service to tenants is a protected property right, stated that because the plaintiff did not "demonstrate[] that she was deprived of a property interest within the meaning of the Fourteenth Amendment . . . ," there was no need to further consider the claim of a Due Process violation.  Golden v. City of Columbus, 404 F.3d 950, 958 (6th Cir. 2005).  However, the Golden Court recognized "it is well established that the Due Process Clause of the Fourteenth Amendment regulates . . . those 'actions of government that work a deprivation of interests enjoying the stature of property within the meaning of the Due Process Clause.'"  Id. at 955 (quoting Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9, 98 S. Ct. 1554, 1560 (1978).  The plaintiff in Golden failed to set forth state laws which would support her claim of a property interest, although such laws may have existed.  See 404 F.3d at 958.

Other courts have found that tenants do possess a protectable property interest in water service.  See e.g., Koger v. Guarino, 412 F. Supp. 1375, 1386 (E.D. Pa. 1976) (finding water users possess a property interest in that service);  Davis v.

- 8 -

Weir, 328 F. Supp. 317, 321-22 (N.D. Ga.1971) (holding that the defendant, Atlanta Water Works, cannot terminate water service without prior notice to the tenants), aff'd, 497 F.2d 139, 144 (5th Cir. 1974).

Customers of a municipal utility were found by the Supreme Court to have a protected interest in the service provided to their home, thus requiring the municipality to provide proper notice of a possible disconnection, including informing the customer of the right to a hearing or procedure to challenge the validity of the decision prior to any termination of service. Memphis Light, 436 U.S. at 14-15, 98 S. Ct. at 1563. In Memphis Light, the utility terminated gas and electric service to the respondents' home due to non-payment, but the utility failed to provide proper notice prior to termination; notice that would have provided residents the means and opportunity to dispute the inaccurate charges which led to the termination. See id. While the utility informed customers of the impending disconnection of service, the mailings through which this was done did not provide for "'some kind of hearing' prior to the deprivation of a significant property interest," a notification required by due process of law. Id. at 19, 98 S. Ct. at 1565 (quoting Boddie v. Connecticut, 401 U.S. 371, 379, 91 S. Ct 780, 786 (1971)). Therefore, once the property interest in a utility service, such as water service, is created, proper notice of the potential termination of that service must consist of both a declaration that the service shall be disconnected at some point in the future, and a notification of the opportunity for a hearing to voice concerns, uncover billing errors or discuss the existence of hardships.

In affirming that customers do possess a property interest in the service provided by the municipal utility, the Supreme Court acknowledged the import of running water in the daily life of its users.  The Court stated that "[u]tility service is a necessity of modern life; indeed the discontinuance of water or heating for even short periods of time may threaten health and safety."  Id. at 18, 98 S. Ct. at 1565.  In order to protect the right to service from a municipal utility, the municipality must make the customer aware of the existence of "an avenue of redress" prior to terminating service, in addition to a notification of the pending termination.  Id. at 13, 98 S. Ct. at 1562.  In a hearing, billing errors may be recognized and addressed or arrangements could be made with customers experiencing hardships, in an effort to stave off the termination and avoid depriving users of their property interest.  See id. at 18, 98 S. Ct. at 1565.

Property rights arise from "'an independent source such as state law,' [with] federal constitutional law determin[ing] whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause."  Id. at 9, 98 S. Ct. at 1560 (quoting Bd. of Regents v. Roth, 408 U.S. at 577, 92 S. Ct. at 2709 (1972); Perry v. Sindermann, 408 U.S. 593, 602, 92 S. Ct. 2694, 2700 (1972)).  Here, the independent source is the City code, specifically § 297-2 of the Water Service Ordinance, which addresses the purpose of the municipal water system.  This section reads in part:

> § 297-2. Purpose.
>
> A. It is the intent of the City of Auburn to continue to furnish an adequate supply of pure and wholesome water to the residences and business and industrial establishments in the City of Auburn and its

immediate vicinity and also to supply sufficient water with sufficient
pressure in its water supply system to adequately protect the buildings
in the City from damage or destruction by fire and to permit the
residents of the City to have the protected rate of the fire rating
organizations on their fire insurance for both their buildings and
personal property.

B. This chapter is therefore enacted in order that the water supply
system shall be properly maintained, improved and extended primarily
for the benefit of the <u>water users and taxpayers</u> within the City limits.

Pltf.'s Stmt. of Material Facts and Exs. (hereinafter "SMF"), Dkt. No. 19-7, 20[2]

(emphasis added).  The ordinance is clear in specifying the City's intent and

purpose to supply water service to residences in the City (and its immediate vicinity)

for the benefit of both water users and taxpayers.  The enactment of such an

ordinance is an "independent source of law" which establishes a property interest

and "legitimate claim of entitlement" in water service by the water users, including

tenants.  <u>See</u> <u>Memphis Light</u>, 436 U.S. 1 at 9, 98 S. Ct. at 1560.

## 2.  <u>Due Process Required Prior to State Deprivation of Property Interest</u>

The question remains whether the property interest of the plaintiff required

the type of due process procedure she alleges was lacking here.  Two issues are

considered:  (1) the level of due process required prior terminating water service to

the plaintiff, and (2) the level of due process required after declining to provide water

service in plaintiff's name.  To determine the appropriate level of due process, the

Court has established a three prong assessment which considers:

"First, the private interest that will be affected by the official action;
second, the risk of an erroneous deprivation of such interest through

---

[2]  The statement of material facts (SMF) has been divided into multiple sections, therefore
citations to the SMF refer to the section and page where the cited information exists on CM/ECF.

> the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural
> requirement would entail."

Id. at 17 (quoting Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 903

(1976)).

Applying the first prong here, the City's action to disconnect water to the

plaintiff's home significantly affected her interest in water service.  By its action, the

City rendered Pilchen unable to bathe herself or her infant child, wash dishes,

launder clothes, or use the toilet in her home.  The defendant was not blind to the

ramifications of its actions.  Once it disconnected the water to Pilchen's residence,

the City deemed the property uninhabitable and condemned it, forcing the plaintiff

and her child to either move, or take immediate steps to have the water reconnected

to the property.  The City's action severely impacted her basic interest in not only

having running water, but even more importantly, effectively deprived her of her

home.  In affirming that customers do possess a property interest in the service

provided by the municipal utility, the Supreme Court acknowledged the import of

running water in the daily life of its users.  The Court stated that "[u]tility service is a

necessity of modern life; indeed the discontinuance of water or heating for even

short periods of time may threaten health and safety."  Memphis Light, 436 U.S. 1 at

18, 98 S. Ct. at 1565.  The plaintiff here experienced just such an effect.

Second, there is a plausible risk of the City erroneously terminating service at

a property.  This undesired outcome can be protected against, at least in part, by

offering a hearing to those that will be impacted by the City's action.  During a

hearing, issues concerning billing errors or the failure to properly credit a payment could be brought to light.  As is the case here, the relatively slight burden borne by the municipality in supplying an opportunity for a hearing to its customers prior to terminating service was found by the Supreme Court to be outweighed by the possible benefits generated by implementing such a procedure.  In a hearing, billing errors may be recognized and addressed or arrangements made with customers experiencing hardships in order to stave off the termination.  See id.  The value of adding this opportunity to address potential issues before service is terminated is enjoyed both by the customer and the service provider.

Finally, the implementation of a process that would allow for contesting potential errors prior to terminating service does not appear to be overly burdensome.  The City had a process in place through which it gave notice to residents that water service would be disconnected in a short period of time.  The additional process of providing those residents a hearing to air their issues could assist the City in both its administrative and fiscal responsibilities.  The termination of water service renders the premises uninhabitable, creating the potential for another abandoned property on the City tax rolls.  The effectively evicted occupants may leave the City altogether, moving to a community where their rights are recognized.  It is in the fiscal interest of the City to try to avoid such an outcome by terminating service only after allowing all of the interested parties, both owners and occupants, to be heard.

The City clearly has a right to terminate water service as a result of unpaid bills.  Providing all water users the opportunity to be heard prior to undertaking the

serious step of terminating their service is in the best interests of both parties to avoid rendering a building uninhabitable.  In fact the City had in place a process for property owners to grieve their concerns, a process that could readily have been extended to tenants as well.  Defendant now seems to have recognized the benefits of such a process.  Since this complaint was filed, the City has added language to its new disconnection notice, advising both owners and occupants of their right to a hearing prior to the termination of water service.  SMF, Dkt. No. 19-5 at 27. Although  the City reacted properly through the benefit of hindsight, the plaintiff here did not capitalize from the City's late recognition of the need to provide due process to its residents.  Disconnecting plaintiff's water service on the three occasions without prior notice of the right to a hearing was a violation of her right to due process under the Fourteenth Amendment.

The plaintiff also states the City violated her right to due process when defendant denied her application for water service without supplying a written notice of the reason for the denial.  The facts indicate that despite the City's summary denial of service in her name, the defendant turned water back on at the Elm Street property pursuant to plaintiff's request, although reconnection was contingent upon payment being made on her landlord's account.

The first prong of the Eldridge test applied here weighs the affect of the City's action on the plaintiff's private interest, that is, her ability to receive water service from the defendant.  424 U.S. at 335, 96 S. Ct. at 903. The plaintiff's immediate interest in receiving water service was not materially affected by the lack of a formal notification of why she was deemed ineligible for water service.  The City reinstated

water service to the plaintiff's residence, so the effect of not receiving a written notice stating why it would not provide service in her name was moot in regards to having water service available to her.  However, by not notifying the plaintiff why she could not apply for service, the plaintiff had no choice but to follow the demands made by the defendant in order to have water service begin again, service that was disconnected twice after her initial request.  Providing a written explanation and an opportunity to be heard to the plaintiff may have prevented the subsequent disconnections, or supplied the impetus for Pilchen to seek housing elsewhere if she was effectively blocked from obtaining water service without the permission of her landlord.  The lack of explanation here affected the plaintiff's decisions by not fully informing her, as due process dictates.

The City's procedure here of not providing a written explanation for declining water service creates a risk of erroneously preventing a "taxpayer or water user" from obtaining a service to which he is entitled.  Similarly, the administrative or fiscal burden required to supply such a notice to all applicants appears to be slight. Minimal effort is required to provide a letter to the party asking for service, when that service is denied.  Summarily denying plaintiff water service, particularly when supplying service to water users is the stated purpose of the defendant, is a violation of the plaintiff's right to due process.

Because the City failed to provide written notice to the plaintiff of her right to a hearing prior to deprivation of her property interest in water service on three separate occasions, as well as the defendant's failure to provide a written explanation for why the plaintiff could not apply for service in her name are violations

- 15 -

of the Due Process Clause of the Fourteenth Amendment.  As a result, the plaintiff's motion for partial summary judgment with respect to her procedural due process claim will be granted.

### C.  Fourteenth Amendment Substantive Due Process

Plaintiff alleges defendant violated her right to substantive due process of the law when she was required to either pay, or promise to pay, the outstanding debt of her landlord in order to reestablish water service to her residence.  Defendant responds that the City's method of collecting delinquent payments has a rational basis towards accomplishing the City's need to be fiscally responsible.

In deciding whether substantive due process was required to preserve a state created property right, it must be determined "whether the applicant ha[d] a clear entitlement to approval . . . from the administrative body" providing the property interest.  Walz, 46 F.3d at 168 (citations omitted).  If, "absent the alleged denial, there is . . . a very strong likelihood that the application would have been granted," then a legitimate claim of entitlement exists.  Id.  When the property interest is withheld due to an arbitrary or irrational reason, the right to substantive due process was inappropriately denied.  See id. at 169 (citing Brady v. Town of Colchester, 863 F.2d 205, 216 (2d Cir. 1988) (explaining the purpose for remanding to lower court for further determination)).

Here, plaintiff acknowledges the provision of water is not a federally protected right, however, Pilchen asserts that she possesses a property interest in water service.  Again, the City's water ordinance validates Pilchen's assertion.  SMF, Dkt. No. 19-7 at 20.  Therefore, further consideration must be given to plaintiff's argument

that the City's action to deny her water service, unless she assumed her landlord's debt, was not rationally related to a legitimate governmental interest.  To determine whether a rational basis exists for the actions here, the intent of the City in establishing this method of enforcement must be weighed against the effect of the policy on its "water users."

A key purpose in the City's decision to change its water collection procedures was to hasten the collection of delinquent water accounts, one of several means towards improving the overall financial standing of the City.  See id. at 1-8.  The City's rationale was that by disconnecting water when a quarterly bill went unpaid, rather than periodically adding the delinquent monies to the property tax bill as had been done previously, the City would speed up the collection process and improve the municipality's cash flow.  While there does not appear to have been an overt decision by the City to pressure tenants into paying their landlords' delinquent water bills, they were aware that by turning off water, this could be an outcome.  Id. at 8.  A tenant facing the termination of water service to her home might weigh the costs associated with locating and moving into another residence, against the costs of satisfying the debt of the landlord and choose the latter.

A City policy which causes an innocent third party to make such a decision does not have a rational basis.  The City can and should enact policies which will enable it to reach its fiscal goals.  However, those policies cannot go so far as to pressure a tenant into assuming her landlord's debt in order to maintain a service the City has agreed to provide.  In Walz, the Court determined that forcing a landowner to convey a portion of their land, in order to obtain a permit to access the municipal

water supply, was irrational and a violation of the landowner's right to substantive due process.  See 46 F.3d at 169.  Here, the City compelled Pilchen to assume her landlord's obligation in order to have the water to her home reconnected and avoid being forced from her home.  Coercing a tenant to pay for the financial negligence of her landlord is not a rational method of collecting a delinquent water bill and violates her right to substantive due process.  Plaintiff's motion will be granted.

### D.  Equal Protection Violation

Plaintiff asserts that the City:  (1) refused to provide water service to her because she is a tenant rather than a property owner and (2) credited the funds she paid to "current charges for service to the landlord's account[, which] was irrational and unrelated to the purposes of a municipal water utility . . . " thereby violating her right to equal protection under the Fourteenth Amendment.  Compl. ¶ 40.  Defendant failed to refute Pilchen's assertion that she was denied water because she is a tenant.  However the City does argue it had a valid governmental interest to collect "this year's water expenses this year."  Def.'s Br. at 20.  For determination here is whether there is a rational basis for the City's action.

"'Under "'traditional'" equal protection analysis, a legislative classification must be sustained, if the classification itself is rationally related to a legitimate governmental interest.'"  Davis v. Weir, 497 F.2d 139, 144 (5th Cir. 1974) (quoting U.S. Dep't of Agric. v. Moreno, 413 U.S. 528, 533, 93 S. Ct. 2821, 2825 (1973)).  In Davis, tenants in Atlanta were generally able to apply for water service to their residences, however applications for service from tenants like Davis were refused by the city water works based solely on the outstanding obligations of prior residents or

the owner.  See 497 F.2d at 144.  The Davis Court held that the "discriminatory rejection of new applications for water service based on the financial obligations of third parties fails to pass . . .  the traditional 'rational basis' analysis," finding that the "collection scheme . . . is devoid of logical relation to the collection of unpaid water bills from the defaulting debtor," stating further that an outstanding debt of a third party "is an irrational, unreasonable and quite irrelevant basis upon which to distinguish between otherwise eligible applicants . . . ."  See id. at 144-45.

Similarly, in a Ninth Circuit case, the court found that "refusing a new tenant water service because of the debt of an unrelated prior tenant is illogical."  O'Neal v. City of Seattle, 66 F.3d 1064, 1068 (9th Cir. 1995).  As was the case in Davis, the tenant was allowed by the city of Seattle to apply for water service and was rejected solely due to the existence of a prior obligation.  As part of the O'Neal Court's determination of whether there was a rational basis for the decision by Seattle, it stated that "[p]ursuing payment from the prior tenant and the landlord would be rationally related to the City's goal; refusing service to an unobligated new tenant is not."  Id.

In a Sixth Circuit case, the court reversed a district court's ruling that there was no equal protection violation when the City of Columbus refused water service to applicants who were not landowners.  Golden, 404 F.3d at 959.  The Golden Court distinguished two separate forms of disparate treatment:  first, the discriminatory treatment between tenants and landlords; and second, the discriminatory treatment of tenants seeking service at premises without outstanding water bills and those tenants seeking service at premises with outstanding water bills.  See id.  After

emphasizing the distinction between the two situations, the <u>Golden</u> Court reversal was based solely on the allegation of unequal treatment between tenants, not the unequal treatment of tenants and landlords.  <u>See</u> <u>id</u>. at 961.

Like <u>Golden</u>, the issue for determination here is whether defendant had a rational basis for treating a tenant like Pilchen, whose landlord was delinquent, in a different manner than tenants with landlords that were current.  To prevail in her claim, plaintiff must show that this disparate treatment failed to serve a rational governmental interest.

Here, the City's practice prevented tenants from establishing water service under their name if there were prior unpaid water obligations at the property.  SMF, Dkt. No. 19 at 8-9, ¶ 28.  The City does not deny this, nor does the City offer any explanation for why this was its practice.[3]  Two categories of tenants evolved as a result of the City's policy:  tenants who could establish water service in their name and tenants who could not because of the unpaid obligations of a third-party.  A tenant who is required to cure the default of a third party before receiving water service bears an unfair burden in their effort to become a water user.  Such a policy runs contrary to the purpose of the City's water unit and is not based upon any sound rationale.  The City water department exists to serve water users.  Preventing access to that service because of the actions of an unrelated party is entirely unreasonable. There is no rational basis for treating otherwise similarly situated tenants in such a disparate manner.

---

[3]  As previously stated, because the defendant failed to respond to the plaintiff's statement of material facts, the statements therein are considered admitted facts in this action.

The City not only prevented Pilchen from establishing a water service account in her name, it also required her to pay the past due obligations of her landlord in order to reestablish water service to her residence.  Id. at 9, ¶ 29.  Arguing that it has a valid interest to collect unpaid water bills from any source, the City cites a Third Circuit decision to support its methods.  Def.'s Br. at 18 (citing Ransom v. Marrazzo, 848 F.2d 398 (3rd Cir. 1998)).  There, the court concluded that "the classification of service eligibility according to the presence or absence of encumbrances does survive rational relationship scrutiny."  Ransom, 848 F.2d at 413.  However, Ransom is readily distinguishable from the case here.  The plaintiffs in Ransom were owners or occupants who were closely related to the owner, parties carefully classified in the court's opinion as "non-tenant occupants."  Id. at 401.  In a footnote, the Ransom Court identified it was not addressing the constitutional question of denying water service to non-delinquent tenants, but rather ruling only on the constitutional question of withholding water service to owners or "non-tenants" because of the obligations of previous users.  See id. at 402.  Here Pilchen was a tenant, not an owner or non-tenant occupant.  The issue here is the exact question the Ransom Court indicated it was not addressing, thus the City's use of Ransom to support its argument is unpersuasive in deciding the matter here.

The City has a responsibility to effect collection of past due water bills in order to maintain or improve the municipality's financial position.  However, the City also has a responsibility to pursue that objective in a rational manner.  Here, as is often the case, the end simply does not justify the means.  Pilchen paid her landlord for the water service as part of her rent and the landlord was obligated to pay the City for

water service to plaintiff's home.  In this situation, demanding the tenant satisfy her landlord's debt by effectively paying for water service a second time, is an entirely unreasonable procedure by the City.  The tenant is forced to choose between being forced from her home, through no fault of her own, or paying for services a second time.  This results in an outcome where "[t]he person directly penalized by the scheme is not the debtor but an innocent third party with whom the debtor has contracted."  Golden, 404 F.3d at 962.

Such a policy is untenable.  The City has the means to collect from the obligated party, using methods which will not force a third party make such a choice.  For example, an escrow account might have been established where rental payments were directed in lieu of turning off water service.  Whatever method the City might have chosen, any scheme which essentially manipulates an innocent third party into assuming the debt of another fails to serve any rational basis.

Pilchen's allegation of a violation of her right to equal protection because the City denied water service to her and coerced her to pay her landlord's delinquent water bill will be sustained.  The City has no rational basis to summarily refuse to establish an account in a tenant's name and then proceed to coerce her to pay her landlord's delinquent bill in order to avoid being evicted.  By choosing to implement such an irrational process here, the City violated plaintiff's constitutional right to equal protection.

## IV.  CONCLUSION

The City clearly failed to provide the plaintiff with proper notice prior to depriving her of her property interest in water service, a violation of plaintiff's right to

procedural due process.  Additionally, there was no rational basis in the City's act of requiring Pilchen to pay on her landlord's delinquent account before reinstating water service, a violation of plaintiff's right to substantive due process.  Similarly, the lack of a rational basis for coercing the plaintiff to assume her landlord's debt and the disparate treatment she received as a tenant were violations of her right to equal protection.

Accordingly, it is ORDERED that:

1.  Plaintiff's motion for partial summary judgment is GRANTED:

a.  The defendant violated plaintiff's right to procedural due process by not providing adequate notice prior to terminating water service and by failing to provide a written explanation for refusing to accept an application for water service from her;

b.  The defendant violated plaintiff's right to substantive due process when it refused to provide water service unless she paid her landlord's debt;

c.  The defendant violated plaintiff's right to equal protection when it refused to provide water service in her name because of her landlord's delinquent obligation; and

2.  Defendant's cross motion for summary judgment is DENIED.

IT IS SO ORDERED.

United States District Judge

Dated:  August 5, 2010
        Utica, New York

- 23 -